**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| **COREY ZICKAFOOSE** | Case No.: 3:26-cv-134 |
| Plaintiff, | Judge Thomas M. Rose |
| vs. | |
| **VANDALIA BUTLER SCHOOL DISTRICT,** *et al.* | **AMENDED COMPLAINT** |
| Defendants. | **WITH JURY DEMAND** |

Now comes Plaintiff ("Zickafoose" or "Plaintiff") by his counsel, and for his Amended Complaint against Defendant Vandalia Butler School District, Jordan Shumaker and Jason Sutherland hereinafter referred to as "Defendants" states as follows:

## I.  NATURE OF ACTION, PARTIES, JURISDICTION & VENUE

1.  This is an action for wrongful discharge predicated on disability, the creation of a hostile work environment, retaliation, and age discrimination in violation of the Americans with Disability Act, 42 U.S.C.§1201, et seq., the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq. and is further brought pursuant to a notice of right to sue, issued by the Equal Employment Opportunity Commission. In addition, Plaintiff brings related state claims for tortious interference with employment.

2.  Plaintiff is a former employee of the Vandalia Butler City School District and Defendant Butler was Plaintiff's employer at all relevant times herein.

3.  This Court has subject matter jurisdiction over federal employment discrimination matters and in particular actions brought pursuant to the Americans with Disability Act and the Age Discrimination in Employment Act.

1

4.  Venue in this district court is proper as Plaintiff worked for Defendant at a location in Montgomery County Ohio which is in with the district court's authority and operation.

## II.  FACTUAL BACKGROUND

5.  Plaintiff restates the previous allegations of paragraphs 1-4 herein.

6.  At all relevant and material times hereto, Plaintiff worked as a teacher and coach for the Vandalia Butler School District at Vandalia Butler High School. Plaintiff's date of birth is March 2, 1982.

7.  Plaintiff began his employment with Defendant in August 2017. As a result of his military service, Plaintiff was diagnosed with several disability conditions. Defendant was aware of these conditions.

8.  Throughout his employment with Defendant, Plaintiff was highly regarded as both a teacher and coach. Until the events occurring just shortly before the ending of his employment with Defendant, Plaintiff was never the subject of any disciplinary action, nor did he receive any negative performance reviews.

9.  Since the 2013-2014, school year Plaintiff has always been given an accomplished or skilled performance review in any school district he has worked in. Plaintiff, at all times material hereto, was the only teacher in the district over the age of 40 who was not granted a continuing contract and was instead, non renewed.

10.  In the Fall of 2021, Plaintiff discovered that there were missing funds in his track account which is primarily funded by fundraisers put on by the respective teams. At this time, Plaintiff was teaching at Defendant and also serving as a track coach, pursuant to a supplemental contract funded and provided by Defendant.

11.     Plaintiff brought the cash shortage to the attention of Defendant as well as Defendant Shumaker who was then Defendant Butler's Athletic Director but said Defendants became upset with Plaintiff for raising these concerns and did not order a financial audit. Other coaches at Butler also expressed concerns about shortages from their athletic accounts and received similar treatment and a lack of and effective response. Every Butler coach, including Plaintiff, who complained about and reported shortages were eventually forced to resign and/or terminated from employment at Defendant. Defendants' misuse of these funds violates rules and policies established by the Ohio Ethics Commission. Defendant's response or non response to these allegations exacerbated Plaintiff's disability.

12.     At a meeting with Defendant Butler to discuss Plaintiff's threatened non renewal in May 2024 Defendant's Superintendent advised Plaintiff that the district and he knew that Plaintiff had reported the sports accounts shortages to the state and the Superintendent was upset that this had occurred. Defendant Butler would subsequently go on to non-renew, Plaintiff even without any justification for the non renewal other than its concerns about Plaintiff's reporting to the Ohio Department of Education. Defendant's action exacerbated Plaintiff's disabilities.

13.     As stated above, Plaintiff, at all relevant times was serving as Butler's boys varsity track coach. Starting in 2018 and 2019 Plaintiff and the girls head track coach reported to Defendant Butler that an assistant track coach was briefly showing up to practice. Then a new girl's track coach was hired by Butler and this coach also showed up late and Plaintiff was often required to cover for this coach. This coach would eventually be fired by Butler after failing to attend the team's banquet at the end of the season, which necessitated the hiring of a new girls head track coach for the 2021-2022 school year.

3

14. The new girls head coach hired by Defendant Butler was Defendant Jason Sutherland. Immediately upon being hired Defendant Sutherland requested that Plaintiff take over the girls program so Sutherland could coach the boys team. Plaintiff refused this request, which upset Sutherland. Defendant Sutherland only showed up a few times for off season events and Plaintiff reported this to Defendant Shumaker.

15. In the Spring of 2022, a student athlete on Plaintiff's team advised Plaintiff that he didn't feel comfortable around Defendant Sutherland because when he and Sutherland were previously at neighboring lake houses during a summer break, Sutherland was intoxicated and wanted to fight him as well as other boys. Plaintiff initially reported this incident to Defendant Butler's Assistant Principal because he believed that Defendant Shumaker would not take any action. Plaintiff would later report this incident several times to Defendant Shumaker, as he was concerned about the student's safety as well as the student's emotional well being.

16. In the Summer of 2022, Plaintiff met with Defendant Shumaker who told Plaintiff he had spoken to the mother of the athlete described in the above paragraph twice and the athlete's mother stated the alleged fighting incident with Defendant Sutherland had never occurred. Plaintiff advised Shumaker that didn't make sense because he had also spoken to the mother who told him the incident did occur. However, Plaintiff chose, at that time, to believe Shumaker and moved on.

17. In the Fall of 2022, Plaintiff met with Athletic Director, Shumaker, and was asked to resign as the boys track coach, because, according to Shumaker, he didn't get along with all the other coaches. However, Plaintiff believed the resignation was prompted by the reports he had made about Sutherland as well as the missing funds. Plaintiff enjoyed an excellent relationship

4

with the other coaches, other than Sutherland. Plaintiff tendered his resignation as track coach to Defendant Sutherland.

18. In the Spring of 2023, Plaintiff began coaching track at Tipp City High School while still remaining employed as a teacher at Defendant Butler.

19. Also, in the Spring of 2023, Plaintiff received an email from the mother of the student athlete whose son was involved in the lake house incident with Sutherland. She was upset and wanted to know why after reporting the incident to Plaintiff, how Sutherland was not only still coaching at Butler but also coaching her son as well. Plaintiff forwarded the email to then Principal Tom Luebke and Defendant Shumaker. A few months later Plaintiff received another email from the parent advising him she had met with Mr. Luebke and Defendant Shumaker and Defendant Shumaker told her this was the first time he had heard of the incident and that Plaintiff had not reported it to him previously. Plaintiff then advised the mother of the dates and times he had spoken with Defendant Shumaker in person or by email. Defendant Shumaker actions were motivated by his desire for Defendant Butler to terminate Plaintiff's employment. Defendant's action exacerbated Plaintiff's disabilities.

20. In May 2023 the Tipp City track coaches discovered that a Butler athlete was cheating during track events. The Tipp City coaches then asked track officials to watch the Butler athlete for the cheating at a current event and the Butler student was observed by the officials cheating and was disqualified from the event. Defendant Sutherland who was coaching the cheating student became very agitated and started cursing at Plaintiff. Defendant Sutherland then told Tipp City student athletes who were participating in the event that he was going to find Plaintiff and kick his "fucking ass" a violation of Ohio Revised Code Section 2903.13. Plaintiff immediately told Tipp City's Athletic Director about Sutherland's actions and threat who then

5

reported it to the league's commissioner and to Butler's athletic director. Plaintiff was concerned for his personal safety and intended to report the threat to local police. The event also exacerbated Plaintiff's pre existing medical disabilities.

21. Soon thereafter Plaintiff was asked to attend a meeting with the new principal Matthew Williamson, Defendant Shumaker and the head of Human Resources to discuss the incident with the Butler student who cheated and Defendant Sutherland's angry response and threat. At the end of the meeting Mr. Williamson asked Plaintiff to send him all the prior emails he had sent to Defendant Shumaker and Mr. Luebke regarding issues with Defendant Sutherland and Plaintiff agreed to do so. At that time Plaintiff believed that Defendant Butler was treating Defendant Sutherland's threats as a serious matter. A few days later Plaintiff followed up with Human Resources, thanked the Director for the meeting and asked if technical operations would be searching his emails and forwarding them to Principal Williamson or if he needed to do so himself. In response Plaintiff received an email from Defendant Butler's Human Resources Manager, with multiple administrators copied, that if he brought up anything else about Defendant Sutherland that Plaintiff would face disciplinary action and that the Tipp City coaches were also guilty because they reported the cheating to officials. Plaintiff, who was considering filing criminal charges against Sutherland, due to concerns for his physical safety and mental health elected not to do so due to the threat of disciplinary action. Plaintiff had a clear statutory and constitutional right to file police charges. Defendants' actions exacerbated Plaintiff's disabilities.

22. In August 2023 during the first day of the 2023-2024 school year Principal Williamson advised Plaintiff that Defendant Butler was requiring that he be placed on three performance evaluations for the 2023-2024 school year due to last year's track incident when he was

6

threatened by Defendant Sutherland. The evaluations had nothing to do with any performance issues of Plaintiff and were in retaliation for Plaintiff's raising public policy concerns about the money shortage and Defendant Sutherland's criminal actions. Once again Defendant's actions exacerbated Plaintiff's disabilities and mental health.

23. After Plaintiff's first evaluation, he was told he had some developing marks in professionalism, the first time in his career that he had received same. Plaintiff asked Williamson why he was being given developing marks for professionalism, but did not receive a response. Plaintiff believed he received the marks in retaliation for being part of the Tipp City team that reported a Butler player for possible cheating and reporting Defendant Sutherland's actions at the event. Plaintiff's overall rating at the evaluation was skilled.

24. Plaintiff received a skilled rating for his second evaluation and an accomplished rating for his third evaluation. After both evaluations, Plaintiff asked Principal Williamson why he was given developing marks on his first evaluation and never received a response, other than Williamson indicating that Plaintiff had an issue with a district employee. Principal Williamson advised Plaintiff he could not otherwise tell him why he received the marks and was unaware of any policy or rule Plaintiff violated. Also, at the final evaluation, Williamson told Plaintiff "his gut" was telling Plaintiff would not be renewed for the 2024-2025 school year. Clearly this had nothing to do with Plaintiff's job performance and these actions exacerbated Plaintiff's disabilities and mental health.

25. On December 12, 2023, a student was stabbed at the high school during the school day and staff, students and parents were not made aware of the incident. Plaintiff approached Superintendent Williamson about the stabbing incident of Williamson and told Plaintiff the school district would not purchase metal detectors because Principal Oleary said, "This would set

7

a bad image for the school." Plaintiff reported this incident to the Office of Professional Conduct.

26.     On or about March 18, 2024 Plaintiff had a phone conference with the Deputy Chief at the Ohio Department of Education about several of the matters asserted herein. The Deputy Chief urged Plaintiff to report these matters to the Office of Professional Conduct. In April 2024, Plaintiff on several occasions reported the violations discussed above and other Butler violations to the State Board of Education/Office of Professional Conduct pursuant to Ohio Revised Code Section 4732.17 and Ohio Administrative Code 4757-5-01.

27.     During the 2023-2024 school year, Defendant Sutherland despite not being a teacher, was allowed to come into the high school during school hours and would intentionally walk by Plaintiff's classroom and stare at him while he was teaching and would come in during Plaintiff's lifting times in the weight room. Sutherland shoulder checked Plaintiff on January 17, 2024 in a hallway when Plaintiff was heading towards his classroom. On January 18, 2024 around 8:45 a.m. Plaintiff was walking from his health classroom to his next class when Defendant Sutherland attempted to shoulder check Plaintiff again, but Plaintiff stepped out of the way. Another teacher reported Sutherland's action to the Principal but no action was taken against Sutherland. Plaintiff believed Defendants were trying to force Plaintiff to respond to Sutherland in a physical manner, so they would have grounds to terminate his employment. This further exacerbated Plaintiff's disabilities and mental health.

28.     In the Spring of 2024, Marghee Zimpher, Butler's Special Education Supervisor/Director chocked out a student and continued to choke him out on the ground. Plaintiff reported this incident to the Office of Professional Conduct in Columbus Ohio.

29. In May 2024 Plaintiff attended a non renewal hearing with the Defendant's Superintendent, the school district's attorney, Plaintiff's attorney and other individuals. Almost immediately Plaintiff was taken to task by the Superintendent for reporting the missing money and the Superintendent advised Plaintiff we know it was you who made the reports to the Office of Professional Conduct. Defendant Butler at the hearing could not establish any violation of school policy or procedure on the part of Plaintiff.

30. Notwithstanding no negative evidence on the part of Plaintiff, Defendant's Board of Education, in June 2024, voted to non renew his employment contract, which was a defacto termination. Plaintiff who was then over the age of 40, who was non renewed and not provided a continuing contract. This action significantly exacerbated Plaintiff's mental health and his disabilities.

### III. CAUSES OF ACTION
### A. CREATION OF A HOSTILE WORK ENVIRONMENT
(As to Defendants Butler School District, Jordan Shumaker and Jason Sutherland)

31. Plaintiff restates the allegations of paragraphs 1-30.

32. At all relevant and material times Defendants conspired to create a hostile work environment for Plaintiff predicated on his disabilities. Defendants were aware that their actions would exacerbate Plaintiff's mental health and disabilities.

33. Said Defendants intentional and malicious actions were predicated on Defendants attempts to harm Plaintiff both from a physical and mental health standpoint. Defendant Sutherland on two occasions body checked Plaintiff with the intent to harm him.

34. Plaintiff's mental health and physical health conditions were exacerbated by Defendants' actions.

9

35. As stated above, said Defendants actions damaged Plaintiff and were intentional, willful and malicious entitling Plaintiff to an award of punitive damages.

### B. INTENTIONAL TORTIOUS INTERFERENCE WITH EMPLOYMENT
(As to Defendants Jordan Shumaker and Jason Sutherland)

36. Plaintiff restates the allegations of paragraphs 1-35.

37. Defendants Shumaker and Sutherland were aware that Plaintiff possessed a teaching contract as well as supplemental coaching contracts with Defendant Butler.

38. Defendants jointly and severally on repeated occasions contacted Defendant Butler attempting to harm Plaintiff's employment relationship with Butler by alleging that Plaintiff was not performing his duties for Defendant Butler and/or providing false information about Plaintiff. Said actions were predicated and motivated by said Defendants seeking a personal gain or benefit.

39. As to Defendant Shumaker his personal gain and/or benefit, including, but was not limited to avoiding responsibilities for the cash shortage in athletic funds accounts and from protecting his personal friend Jason Sutherland from losing his position as track coach with Defendant Butler.

40. As to Defendant Sutherland his personal gain and benefit was maintaining his position as track coach at Defendant Butler, avoiding criminal prosecution for his threats made against Plaintiff, and for body checking Plaintiff for obtaining the boys' track coach position and for avoiding responsibility for threatening a student athlete and fighting with the student.

41. Defendants Shumaker and Sutherland acted in concert with Defendant Butler officials to terminate Plaintiff so as to not be held responsible for their insubordination, unlawful and criminal acts, failure to audit, violation of staff policies and procedures and their creation of a culture of non accountability.

10

42.     As a result of said Defendants actions Plaintiff has been damaged and said actions exacerbated Plaintiff's mental health and disabilities.

43.     Defendants actions were intentional, willful and malicious entitling Plaintiff to an award of punitive damages.

## C.   WRONGFUL TERMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT AND OHIO REVISED CODE 4112.02 HANDICAP/DISABILITY DISCRIMINATION

44.     Plaintiff restates the allegations of paragraphs 1-43.

45.     Plaintiff, as a disabled individual is a member of a class of individuals protected from disability discrimination by Ohio Revised Code 4112.02 and the Americans with Disability Act.

46.     Plaintiff was treated differently by Defendant Butler than non disabled employees in respect to the terms and conditions of his employment, up to and including the termination of his employment with Defendant.

47.     Defendant Butler lacked any business justification for Plaintiff's termination.

48.     Plaintiff's employment termination was clearly related to his mental health disabilities and Defendant Butler's response and interference with same.

49.     Terminating an employee under these circumstances without legal consequences violates the Americans with Disabilities Act and Ohio Revised Code Section 4112.02.

50.     As a result of Defendant's actions as described above Plaintiff has been damaged as set forth above.

## D.   WRONGFUL DISCHARGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND OHIO REVISED CODE 4112.02 AGE DISCRIMINATION

51.     Plaintiff restates the allegations of paragraphs 1-50.

11

52.    Plaintiff, as an individual over the age of forty is a member of a class of individuals protected from age discrimination by the Age Discrimination in Employment Act and Ohio Revised Code 4112.02.

53.    Plaintiff was treated differently by Defendant Butler than younger comparable teachers in respect to the terms and conditions of his employment, especially in respect to evaluations, ratings and being denied a continuing contract, up to and including the termination of his employment with Defendant.

54.    Defendant Butler lacked any business justification for Plaintiff's termination.

55.    Plaintiff's employment termination was clearly related to his age and Butler's response and interference with same.

56.    Terminating an employee under these circumstances violates the Age Discrimination in Employment Act and Ohio Revised Code Section 4112.02.

57.    As a result of Defendant's actions as described above Plaintiff has been damaged as set forth above.

## IV.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Reinstatement plus backpay in excess of $250,000;

B.    Compensatory damages in excess of $300,000;

C.    Punitive damages in excess of $300,000;

D.    Statutory damages;

E.    Pre and post judgment interest;

F.    Reasonable attorney fees and costs; and

G.    Such other relief as this Court deems just and equitable.

12

Respectfully submitted,

DUWEL LAW

*/s/ David M. Duwel*
David M. Duwel (0029583)
130 W. Second Street, Suite 2101
Dayton, Ohio 45402
(937) 297-1154, telephone
(937) 297-1152, facsimile
david@duwellaw.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served via the Court's electronic system to Plaintiff's counsel this 22nd day of May 2026.

*/s/ David M. Duwel*
David M. Duwel

13